AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| vs. | |
| CHRISTIAN GERALDO MEJIA | CASE NUMBER: 2:07-mj-1067-DNF |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about May 23, 2007, in Lee County, in the Middle District of Florida, Christian Geraldo Mejia, defendant herein,

> did willfully and maliciously impart and convey false information, knowing the information to be false, concerning an attempt to place a destructive device in, upon, or in proximity to a civil aircraft used and operated in interstate air commerce,

in violation of Title 18, United States Code, Sections 35(b) and 32(a)(2). I further state that I am a Special Agent with the Federal Bureau of Investigation and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☑ Yes ☐ No

_____
Signature of Complainant
James M. Roncinske

Sworn to before me and subscribed in my presence,

May 29, 2007                                    at      Fort Myers, Florida

DOUGLAS N. FRAZIER
United States Magistrate Judge
Name & Title of Judicial Officer              Signature of Judicial Officer

## **AFFIDAVIT**

I, James M. Roncinske, hereby depose and state:

1. That I am employed by the Federal Bureau of Investigation (FBI) as a Special Agent (SA) and have been so employed since October of 1999. Pursuant to my employment, I am a law enforcement officer of the United States and thereby empowered by law to conduct investigations and make searches, seizures, and arrests for offenses enumerated in the United States Code.

2. Immediately prior to being employed by the FBI, I was employed by the City of Rochester, New York, as a police officer. I was a police officer for nine years.

3. As a SA with the FBI, I have received training and experience in conducting criminal investigations. As a police officer, I received training and extensive experience in conducting a variety of felony investigations.

4. I am currently assigned to the FBI's Tampa Division, Fort Myers Resident Agency. I am assigned to investigate violent crime matters that have a federal nexus, civil rights violations, and human trafficking matters. I am also assigned as the Airport Liaison Agent to Regional Southwest Florida International Airport (RSW) in Fort Myers, Florida. I am responsible for investigating crimes aboard aircraft and violations of federal law which occur on airport property.

5. In support of this affidavit, I am relying on my personal investigation, training, and experience, as well as information from other law enforcement officers which I routinely rely on in the performance of my official duties. Because this affidavit is being submitted for the limited purpose of establishing probable cause, your affiant has not included all the information related to this investigation.

6. The subject of this investigation is Christian Geraldo Mejia, also known as (aka) "Christian Gonzalez Mejia," "Christian Geraldo Gonzalez," "Santiago Garcia," and "Jorge Ramirez," Mexican male, who has been known to use the following dates of birth: August 27, 1983; July 27, 1980; and September 15, 1980, last known to reside at 1803 Northwest 21st Street, Cape Coral, Florida 33993.

7. According to a Lee County Port Authority Police (LCPAP) report and witness statements obtained by the LCPAP the following occurred:

    a. On May 23, 2007, Mejia drove his girlfriend, Lady Diana Echverri Serna, Colombian female, DOB September 5, 1981, and her friend Sharon Julie Barona, Colombian female, DOB January 23, 1983, to RSW. Mejia had been living with Serna in Cape Coral, Florida. Serna was going to move to West New York, New Jersey, with Barona. Mejia and Serna planned on maintaining a long distance relationship.

    b. Once at RSW, Mejia, Serna, and Barona went into the airport terminal and went to the JetBlue ticket counter. At the JetBlue ticket counter Mejia tore up a copy of Serna's Colombian passport and identification. Serna advised in her statement to a LCPAP officer that Mejia did not want her to leave and told her he would die without her.

    c. Mejia, Serna, and Barona went to the "D" security screening point which is staffed by Transportation Security Administration personnel. As Serna approached the screening entrance, Mejia placed her in a bear hug and held onto her. Serna and Barona requested Mejia to let Serna go. Mejia eventually released Serna.

    d. As Mejia was leaving the airport terminal, he approached a skycap.

2

Mejia asked the skycap if he spoke Spanish. The Skycap replied he did not. The skycap used his radio to call for a Spanish speaking employee. Mejia told the skycap in broken English something about two women on JetBlue talking about a bomb in a suitcase. The skycap called the police. A Spanish speaking RSW employee arrived and spoke with Mejia. Mejia told this RSW employee that his girlfriend heard two ladies say there was a bomb in a piece of luggage at JetBlue. Mejia left the airport prior to the arrival of the LCPAP.

8. According to a LCPAP report, a statement provided by Mejia to a LCPAP officer, a Probable Cause Statement completed by Lee County Sheriff's Office (LCSO) Detective William Dunaske, 911 records, and a recording of a 911 call which your affiant obtained the following occurred:

a. Mejia traveled to a British Petroleum (BP) Gas Station located at 13550 Treeline Avenue South in Fort Myers. This BP Gas Station is located at the intersection of Daniels Parkway and Treeline Avenue South and is approximately 3.4 miles from RSW.

b. At approximately 1:02 p.m., Mejia called 911 from the payphone located at the BP Gas Station. Mejia told the 911 operator through a language line translator that he heard two women at the airport in Fort Myers say they were going to put a bomb on a JetBlue airplane. Mejia told the 911 operator through the language line translator that one of the women had dark hair and was wearing a red shirt and blue jeans. Mejia told the 911 operator through the language line translator that the other woman had light brown hair and was wearing a white shirt with diamonds encrusted in it and blue jeans. The 911 operator had the call connected to the LCPAP.

Mejia told the 911 operator and the LCPAP dispatcher through the language line translator that his name was Jorge Ramirez and that his DOB was September 15, 1980. After Mejia was questioned about his whereabouts he hung up the telephone.

9. According to LCPAP Lieutenant Jason Glick, personnel at RSW had to search the JetBlue flight that was going to depart from RSW, screen the luggage aboard the JetBlue flight, and screen the passengers aboard this flight again. No bomb or explosive device was located.

10. According to Lieutenant Glick, LCPAP officers played a recording of the 911 call to Serna and Barona. Both identified the caller as being Mejia.

11. Mejia then made numerous telephone calls to Serna's cellular telephone. During one of the telephone calls, Mejia admitted to Serna that Mejia made the bomb threat in attempt to prevent Serna from leaving. A LCPAP officer had Serna request Mejia to return to RSW. Eventually LCPAP Officer Mike Guedes spoke with Mejia over the telephone and requested Mejia to turn himself in at RSW. According to Lieutenant Glick, Officer Guedes is fluent in English and Spanish. Officer Guedes eventually spoke with a female over the telephone who identified herself as the mother of Mejia's child. Officer Guedes spoke with Mejia and told Mejia he would allow the mother of his child to be present when Mejia turned himself in.

12. At approximately 8:00 p.m., Mejia and the mother of his child appeared at the JetBlue ticket counter at RSW. Officer Guedes interviewed Mejia at the LCPAP office at RSW in the presence of the female who claimed to be the mother of Mejia's child. Prior to the commencement of the interview, Officer Guedes read Miranda warnings in Spanish to Mejia via a standard LCPAP Miranda form. Mejia waived his

rights and provided a five page written statement to Officer Guedes which Mejia signed. Mejia admitted in the statement to twice grabbing Serna against her will at RSW. Mejia also admitted in the statement to telling the Skycap that two women traveling on JetBlue had a bomb. Mejia also admitted in the statement that he left the airport and went to a gas station where he called 911 and told the operator that two females had a bomb. Mejia advised in the statement he never heard Serna say she had a bomb and that he made it up in an effort to have the police prevent Serna and Barona from flying. Mejia advised in the statement that he lied about the bomb threats and that there was no bomb.

13. The LCPAP charged Mejia with Battery-Domestic Violence for grabbing Serna and holding her against her will. The LCPAP lodged Mejia in the Lee County Jail. According to Lieutenant Glick, Mejia did not have any identification on his person when he was arrested.

14. The LCPAP referred the false bomb threat to the LCSO as the threat was made off of airport property in an unincorporated area of Lee County.

15. On May 24, LCSO Detective Dunaske, went to the Lee County Jail and interviewed Mejia with the assistance of a Spanish speaking deputy. Prior to the commencement of the interview, Detective Dunaske advised Mejia of his Miranda warnings. Mejia advised he understood his rights and agreed to speak with Detective Dunaske. Mejia admitted to Detective Dunaske that Mejia called 911 and reported that a bomb was on a JetBlue flight so Serna would not leave. Mejia admitted that he did not have any knowledge of a bomb being aboard the JetBlue flight and that he did not hear anyone talking about a bomb being on a JetBlue flight. Detective Dunaske played

a recording of the 911 call and Mejia admitted that it was his voice on the recording.

16. Detective Dunaske charged Mejia under Florida law with making a false report about planting a bomb.

17. Based upon the foregoing your affiant believes that there is probable cause to believe that Christian Geraldo Mejia willfully and maliciously imparted or conveyed false information, knowing the information was false, concerning an attempt or alleged attempt being made or to be made, about a destructive device being placed in or upon an aircraft, in violation of Title 18, United States Code, Sections 35(b) and 32(a)(2).

Further your affiant sayeth not.

James M. Roncinske
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to me on this 29th day of May, 2007.

DOUGLAS N. FRAZIER
United States Magistrate Judge